517 So.2d 1231 (1987)
STATE of Louisiana
v.
Sidney ANDERSON.
No. KA-7554.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph H. McCusker, III, R. Jeffrey Bridges, Asst. Dist. Attys., New Orleans, for plaintiff-appellee State of La.
Elizabeth W. Cole, Supervising Atty., New Orleans, for defendant-appellant Sidney Anderson.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
KLEES, Judge.
Defendant, Sidney Anderson was charged with three (3) counts of armed robbery, violations of La. R.S. 14:64. He was tried and found guilty as charged on counts one (1) and two (2) and not guilty on count three (3). Defendant was sentenced *1232 to twenty-three (23) years at hard labor for count one (1) and to fifteen (15) years at hard labor for count two (2). The two sentences were to run concurrently without benefit of probation, parole, or suspension of sentence. From these convictions and sentences defendant appeals.
On April 11, 1986, Officer Rebecca Stanley responded to an armed robbery call at the Circle K food store located at 4500 Woodland Drive. Two black males had entered the store, one bought a soft drink and the other looked around before leaving. Shortly thereafter, an off-duty security guard entered the store to warn Basil Davis, the cashier, that two males were loitering outside and one possessed a gun. The security guard left the store and before Davis had time to react, one of the males entered. He wore a stocking mask, carried a gun and demanded money. He then signaled for the second male to enter he also possessed a gun. Mr. Davis gave the assailants the cash register drawer and his wallet.
Subsequently, Detective Richard LeBlanc met with Mr. Davis to show him six (6) photographs. Mr. Davis identified Sidney Anderson, the defendant, as the perpetrator who came to the counter with the gun with the stocking mask over his face.
On June 5, 1986, Maureen Scott and Nicholas Spetsiotis went to the Time Saver on Kabel Drive to buy ice tea. As the two stood by their car, two black males approached them, while two other males stood nearby. One put a gun to Mr. Spetsiotis and the other pointed a gun to Miss Scott's neck. Mr. Spetsiotis recognized the man who held the gun on him from O. Perry Walker School. The perpetrators took his wallet and Miss Scott's purse before fleeing.
Later Detective LeBlanc met Mr. Spetsiotis at his place of employment to show him six (6) photographs. As he picked out the defendant's picture, Miss Scott walked up and saw the picture. The two positively identified the defendant as the perpetrator who held the gun on Mr. Spetsiotis.
Sidney Anderson returned home to learn that the police were looking for him and turned himself in to the police.
A police lineup was conducted on August 1, 1986. All three victims, Basil Davis, Nicholas Spetsiotis and Maureen Scott identified the defendant as the perpetrator of the robberies.
Assignment of Error Number One
Defendant's first assignment of error argues that the trial judge erroneously denied the motion to suppress the identification by Miss Maureen Scott.
A defendant has two hurdles to overcome before an identification procedure will be suppressed. He must prove the identification was suggestive and the likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Buchanan, 463 So.2d 660 (La.App. 4th Cir.1985); State v. Hackett, 506 So.2d 598 (La.App. 4th Cir.1987); State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987); C.Cr. P. art. 703.
Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), enumerated five factors to be considered in determining whether an identification is suggestive:
(1) the witness's opportunity to view the defendant at the time the crime was committed;
(2) the degree of attention paid by the witness during the Commission of the crime;
(3) the accuracy of any prior description;
(4) the level of the witness's certainty displayed at the time of identification; and
(5) the length of time elapsed between the crime and the identification.
The record indicates that Miss Scott was not totally segregated from Mr. Spetsiotis when the picture array was shown. Detective LeBlanc had arranged to meet with Mr. Spetsiotis at his place of employment, Happy's Fried Chicken and Biscuits, in order for him to view the photographs. He had arranged an entirely separate meeting with Miss Scott for the same purpose.
*1233 Miss Scott arrived at Happy's Fried Chicken about five minutes before Detective LeBlanc did. Upon seeing Miss Scott there, he gave the pictures to Mr. Spetsiotis to view. At the hearing on the motion to suppress, Miss Scott testified that she saw the picture that Mr. Spetsiotis chose and that she chose the same one. However, she did not state that she chose the same picture only because he did.
A trial judge's decision to deny a motion to suppress will be afforded great weight and will not be set aside unless the preponderance of the evidence clearly mandates such. State v. Jones, 467 So.2d 147 (La. App. 3rd Cir.1985). The reviewing court may consider all of the evidence presented at trial and not merely the evidence presented at the hearing State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984). Any dispute over the veracity of the victim's or witness' identification will go to the weight of the evidence and not to the admissibility. State v. Williams, supra; State v. Daniels, 473 So.2d 873 (La.App. 4th Cir.1985).
Concluding that Miss Scott's poorly timed arrival and viewing Ms. Spetsiotis' selection of photographs is highly suggestive, the next inquiry is whether the photographic line-up was "so conducive to an irreparably mistaken identification that the defendant was denied due process of law." State v. Guillory, 502 So.2d 258, 261 (La. App. 3rd Cir.1987); quoting State v. Bickham, 404 So.2d 929 (La.1981). The defendant argues that because the photo identification procedure was unduly suggestive, it tainted Miss Scott's subsequent identification at the physical line-up. Miss Scott testified at trial that the crime scene area was well lit and that the incident took approximately forty-five seconds. She said she clearly saw the defendant, Sidney Anderson and noticed his "droopy" face. She further testified that she was in no way influenced by Nick Spetsiotis' choice when she identified the defendant's picture in the photographic line-up. The pertinent part of the testimony was as follows:
Mr. McMahon: Why did you pick out that man at the line-up?
Miss Scott: Because it was the same man clear in my mind.
Mr. McMahon: Why did you pick out the man in the photographic line-up? Was it any influence of Nick?
Miss Scott: No, it was no influence on Nick's part, I mean, he did not even have to show me. I knew that the person was definitely the person that I picked out.
Considering the entire record, we conclude that the photographic line-up did not taint the subsequent physical line-up identification.
An identification made subsequent to an impermissibly suggestive identification will be admissible if there is an independant basis for such. In this case, the physical line-up was conducted a month after the photographic line-up. Miss Scott had no contact with Mr. Spetsiotis until the physical line-up and identification were complete. The defendant was also identified at the physical line-up by Mr. Spetsiotis and Mr. Davis. Even though this court concedes that Miss Scott's photographic identification appears highly suggestive, it is clear that, applying the Manson factors to the present case, the physical line-up had an independent reliable basis which was neither suggestive nor prone to misidentification. For these reasons, we conclude this assignment is without merit.
Assignment of Error Number Two
By this assignment of error the defendant urges that the trial judge erred in imposing an excessive sentence.
Article I Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986); writ den., 503 So.2d 13 (La.1987). The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. *1234 den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985), stay granted ___ U.S. ___, 107 S.Ct. 28, 92 L.Ed.2d 778 (1986). See also State v. Rousell, 501 So.2d 834 (La.App. 4th Cir.1986); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985).
In determining that a sentence is excessive there must be an indication in the record that the trial judge failed to comply with article 894.1. With regard to this article, the Supreme Court has held that although the sentencing judge need not articulate each aggravating and mitigating circumstance enumerated, the record must reflect that the court at least considered the guidelines in tailoring the sentence to the particular defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982); State v. Thomas, 447 So.2d 1053 (La.1984).
Here, the sentencing transcript indicates that the trial judge considered all the letters received on behalf of the defendant from relatives and friends. The judge also took into consideration the defendant's youth and the fact that he had just one misdemeanor on his record. The trial judge specifically stated that he was mindful of C.Cr.P. article 894.1 and its subparagraphs. He noted that in light of article 894.1, the court felt the defendant was in need of correctional treatment which could be provided most effectively by his commitment to an institution. Particularly, the trial judge considered the seriousness of the charge. The defendant was convicted of armed robbery involving two persons. Although the trial court did not articulate each factor listed in art. 894.1, the record reflects that the judge was aware of these factors and considered them in imposing the defendant's sentence. See State v. Shelton, 490 So.2d 515 (La.App. 4th Cir. 1986).
Where the record indicates that a trial judge adequately complied with art. 894.1, a sentence will be vacated only if there is an abuse of his discretion. The defendant was sentenced to twenty-three (23) and fifteen (15) years, with both sentences to run concurrently. This court concludes that these sentences are not excessive in light of the fact that the defendant held a gun on one of the victims, demanded money, took the victim's wallet and was positively identified by both victims.
In State v. Thomas, 468 So.2d 592 (La. App. 2nd Cir.1985), the defendant was sentenced to twenty-five (25) years at hard labor for armed robbery. He argued that some of the mitigating factors were that he was twenty-one (21) years old at the time of the offense, there was no physical harm done, and he was not an extremely dangerous offender. In that case, the trial judge also considered letters from various friends before he sentenced the defendant, the judge found no excuses or justifications for the armed robbery.
In State v. Patton, 478 So.2d 182 (La. App. 3rd Cir.1985), the defendant was sentenced to forty (40) years for armed robbery after he robbed a cashier, slashed her cheek with a knife, and knocked her unconscious. He was twenty-four (24) years old, a first felony offender, a member of the National Guard, and had a six (6) year old son. The court noted, however, that armed robbery is one of the most serious offenses.
In State v. Thomas, 479 So.2d 28 (La. App. 4th Cir.1985), the defendant was sentenced to ninety-nine (99) years for an armed robbery in which he made the victim get on his knees and beg for his life as he held a gun to the victim's head.
This court concludes that the trial judge did not manifestly abuse his discretion by sentencing Sidney Anderson to twenty-three (23) and fifteen (15) years at hard labor. The trial judge considered the letters from religious leaders, friends and relatives; however, these letters did not negate the seriousness of the crimes committed and the potential harm that could have been done. For these reasons, this assignment is without merit.
Accordingly, the defendant's convictions and sentences are affirmed.
AFFIRMED.