545 So.2d 1163 (1989)
STATE of Louisiana
v.
Benjamin LEE.
No. KA 6928.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
*1164 M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Brian T. Treacy, Asst. Dist. Atty., New Orleans, for appellee.
Before BYRNES, CIACCIO and BECKER, JJ.
CIACCIO, Judge.
Defendant, Benjamin Lee was charged with armed robbery in violation of LSA-R.S. 14:64. Lee initially entered a not guilty plea, later withdrew the plea and pled guilty as charged reserving his right to appeal the trial court's rulings on his motions to suppress evidence and identification. The trial court sentenced Lee to five years at hard labor. This appeal arises out of the trial court's denial of defendant's motions to suppress evidence and the identification. We affirm.
In the early morning hours of December 16, 1985, Officer Emmet Dupas of the New Orleans Police Department saw a 1976 Oldsmobile Cutlass stopped at the intersection of Elysian Fields and Claiborne Avenues. A passenger exited the vehicle and, when he observed Officer Dupas, he got back into the car and the driver of the car sped away. Officer Dupas, following the car, ran a computer check on the car license plate number. The check revealed that the Oldsmobile was registered and owned by a man living in Kenner. Officer Dupas then drove alongside the car and recognized the driver as the defendant, Benjamin Lee, whom he had arrested seven months earlier for possession of a stolen vehicle.
Officer Dupas signaled the defendant to pull over. He did not do so immediately, but rather drove further down the street, turned onto a side street and then pulled over under an overpass. Defendant exited the car and walked over to Officer Dupas. The officer asked the defendant who owned the car and Lee replied that he had just bought the car and was in the process of transferring the registration to his name. Officer Dupas then asked for the bill of sale. Lee returned to the car, and began reaching toward the floorboard of the car rather than the glove compartment. Officer Dupas grabbed Lee's arm and ordered him and the passenger out of the car, telling them to go to the front of the vehicle and put their hands in plain view of the hood of the car. Officer Dupas then went back to the car, looked in the open door, and saw a gun lying on the floorboard of the car. When questioned about the gun, Lee replied that he did not know to whom it belonged or how it got in the car. Officer Dupas confiscated the gun, but allowed Lee and his companion to leave the scene in the car.
Officer Dupas then contacted the robbery division of the police department, inquiring as to whether any recent robberies had taken place in the eastern part of the city. The robbery division confirmed that an armed robbery had taken place earlier in the day and that the perpetrator's description matched that of Lee. Subsequently, an officer in charge of robbery investigation compiled a photographic lineup consisting of six pictures, one of which was Lee's. The victim of the armed robbery positively identified Lee as the man who robbed him. A warrant was obtained for Lee's arrest.
*1165 When arrested, police found a gun on the floorboard of the car and another gun in Lee's pocket.
On appeal, the defendant argues that the initial stop of the oldsmobile in the early morning of December 16th was improper because Officer Dupas had neither probable cause nor reasonable suspicion of criminal activity to stop the car. More particularly, he argues that he was under arrest when Officer Dupas ordered him out of the car, and because there was no probable cause for his arrest, the seizure of the gun was unlawful.
The Louisiana Supreme Court in State v. Raheem, 464 So.2d 293, 296 (La. 1985) stated that "An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest." In the instant case, Officer Dupas ordered Lee and his passenger to the front of the car after he realized that Lee was reaching for the floorboard rather than the glove compartment for the car's registration. When asked about the gun, Lee denied all knowledge of it. The gun was seized and Lee and his passenger were allowed to leave. Under these circumstances, we do not find Lee was under arrest when Officer Dupas confiscated the gun. Apparently, Officer Dupas feared for his own safety and as a precautionary measure ordered Lee to the front of the automobile.
Now we address whether Officer Dupas acted lawfully when he initially stopped Lee.
The authorization for a temporary stop without arrest by a police officer of a person in a public place is set forth in LSA-C. Cr.P. Article 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
In order to stop a person temporarily to facilitate an investigation, the officer must have a reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986). Reasonable suspicion is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The facts before us indicate that Lee was stopped at the intersection of Elysian Fields and Claiborne Avenues in a middle lane of traffic. The passenger exited the car but when he saw Officer Dupas, he got back in the car and Lee drove away. Officer Dupas followed the car, and in attempting to determine whether it was stolen, ran a check with the crime computer of the vehicle's license number. When it was revealed that the vehicle belonged to a Kenner resident, Officer Dupas drove next to the car to view the driver. He recognized the driver as a man whom he had arrested previously for possession of a stolen automobile. He also knew the driver was not the same man reported to be the owner of the vehicle. Based on these facts, we find Officer Dupas had a reasonable suspicion that the car might be stolen, and therefore, lawfully stopped the car and inquired as to the car's registration.
The facts before us also indicate that the gun was seized pursuant to the "plain view" exception to the warrant requirement. In order for a warrantless seizure to come under the plain view rule, *1166 three conditions must be satisfied: (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) when it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). As we concluded previously, Officer Dupas acted lawfully when he stopped the car. When Lee reached toward the floorboard rather than to the glove compartment, Lee and his passenger were ordered out of the car, away from the door and told to stand in front of the car with their hands on the hood. Officer Dupas then walked back to the car where the car door was open. He noticed the gun, in plain view, on the floorboard of the car. Lee denied all knowledge and ownership of the gun. As such, we find that Officer Dupas legally seized the gun.
Defendant's second argument on appeal is that the trial court erroneously denied his motion to suppress the identification. Specifically, he contends that the line-up was suggestive in that the victim gave the police a description that the perpetrator wore a white undershirt and that his photograph in the line-up was the only one which depicted a subject in a white undershirt. Additionally, he contends defense counsel was not allowed to argue that the identification was suggestive at the motion hearing.
It is well settled that a defendant has two hurdles to overcome before an identification procedure will be suppressed. He must prove the identification was suggestive and the likelihood of misidentification as a result of the identification procedure. L.S.A.-C.Cr.P. article 703; State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Anderson, 517 So.2d 1231 (La.App. 4th Cir.1987).
Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), enumerated five factors to be considered in determining whether an identification is suggestive:
(1) the witness's opportunity to view the defendant at the time the crime was committed;
(2) the degree of attention paid by the witness during the Commission of the crime;
(3) the accuracy of any prior description;
(4) the level of the witness's certainty displayed at the time of identification; and
(5) the length of time elapsed between the crime and the identification.
At the hearing on the motion to suppress the identification, the victim testified that he went to police headquarters approximately one week after the crime to view a photographic line-up of six photographs. He stated that he went through the pictures by himself and signed his name and address on the back of the picture that he identified as the perpetrator. The victim testified that he did not discuss his choice of pictures with anyone and that the officer conducting the identification procedure did not tell him that he had to identify a picture or that someone had been arrested in connection with the crime. On cross examination by defense counsel, the victim testified that the crime occurred at night. He stated it was night but not very dark and that the robbery took place in a well lit parking lot. He further testified that he got a good look at the perpetrator and that he looked at him several times for approximately fifteen seconds. The record clearly shows that defense counsel was allowed to question the victim as to the degree of lighting, the length of time the victim had to observe the robber, and the fact that the perpetrator was a stranger to the victim. The defense attorney was precluded from asking the victim what he had done after the robber had fled, how long after the robbery had he contacted the police and what description he had given the police. Nevertheless, we find the defense counsel was given ample opportunity to ask questions relative to the suggestiveness of the line-up and the five factors listed in Manson.
The hearing transcript also indicates that the trial judge initially sustained the state's *1167 objections when defense counsel asked the victim the details of the description he had given police. Subsequently, the trial judge put the victim back on the witness stand, but the defense attorney refused to ask any more questions. Over both the state's and defense's objections, the trial judge then asked the victim if he had told the police that the perpetrator was wearing a white undershirt. The victim replied he had not. The court then denied the motion to suppress the identification. In light of this, we conclude the assertion that the identification was suggestive is without merit.
A trial judge's decision to deny a motion to suppress will be afforded great weight and will not be set aside unless the preponderance of the evidence clearly mandates such. State v. Anderson, supra. The evidence and the record in this case support the trial judge's decision to deny both the motions to suppress the evidence and the identification.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.