LOBRANO, Judge.
Defendant, Gregory Holmes, was indicted by an Orleans Parish grand jury for distribution of heroin, a violation of Louisiana Revised Statute 40:966.
Defendant was arraigned on November 30, 1988 and pled not guilty. Following a *958 trial on the merits on January 11, 1989, the jury found defendant guilty as charged. Defendant was sentenced on January 31, 1989 to life imprisonment without benefit of parole, probation or suspension of sentence.[1]
FACTS:
From August, 1987 to approximately February, 1988, the Special Operation Division of the New Orleans Police Department conducted an undercover narcotics investigation dubbed “Operation Pitter-Pat” which targeted street level drug dealers. During the course of the investigation over one hundred (100) “buys” were made involving sixty (60) different individuals. At the conclusion of the investigation, defendant was arrested for distribution of heroin. The facts leading to defendant’s arrest and conviction are as follows.
On October 15, 1987 at approximately 5:00 p.m., undercover New Orleans Police officers, John Evans, Paul Landry, David Fisher and Cindy Patterson arrived at the corner of S. Dorgenois and Thalia Streets. Officer Landry approached a woman, later identified as Wanda West, who was standing on the corner. After a brief conversation, West agreed to sell Landry cocaine. West escorted Landry into the nearby Calliope Housing Project. West then instructed Landry to wait in a breezeway between two buildings while she went inside to get the cocaine. While Landry was waiting for West, he was approached by defendant who offered to sell him heroin. Landry asked defendant where he would be “in a few minutes”. Defendant responded that he would be at the Rose Tavern. Landry then told defendant that he would meet him at the Rose Tavern. Defendant then left. West returned and sold Landry the cocaine. As they walked towards the Rose Tavern, Landry pointed to defendant and questioned West as to his identity. All West knew as to defendant’s identity was that his nickname was either “Giggy” or “Gingy”.
When they reached the bar, West went inside. Defendant was standing outside. Landry approached defendant and again asked him what did he have to sell. Defendant again responded “heroin”. Landry inquired as to the price. Defendant responded it was twenty ($20.00) dollars per bag. Defendant then gave Landry one foil packet in exchange for twenty ($20.00) dollars. The substance found inside the foil packet was later identified as heroin. Landry then left the area in his vehicle. He radioed Officer Evans and informed him that he had made a purchase in front of the Rose Tavern from a black male dressed in blue jeans and a white shirt known as “Giggy” or “Gingy”. Evans then proceeded to the corner in an attempt to find defendant to question him. Defendant, however, had left the area. Landry then returned to police headquarters and submitted the cocaine and the heroin he had purchased from defendant and West.
At trial, Officers Evans and Fisher who were near the scene as back up to Landry both identified defendant as the man who sold the heroin to Landry. Defendant denied he sold heroin to Landry. He testified he was a heroin user, not a dealer, and preferred to steal to support his habit. He stated that other individuals who frequent the corner near Rose Tavern have similar nicknames. Defendant admitted having prior convictions for armed robbery and attempted distribution of heroin.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) A substantial likelihood of irreparable misidentification was created by the suggestive identification procedure and unreliable identification testimony, thus denying defendant’s due process rights under the Fourteenth Amendment of the United States Constitution.
2) The defendant received ineffective assistance of counsel;
3) The trial court gave an erroneous jury charge on reasonable doubt.
*959 ASSIGNMENT OF ERROR 1:
Defendant contends the in-court identification of him as the perpetrator by Officer Landry was unconstitutionally “infirm” due to the unreliable out-of-court photographic identification of defendant by Officer Landry prior to trial. In addition, defendant challenges Landry’s identification because Landry observed over one-hundred (100) drug transactions during a six month undercover operation and could not be expected to keep all the individuals and transactions clear in his mind. Defendant also challenges the identifications of him as the perpetrator made by Officers Evans and Fisher.
When reviewing an out-of-court identification procedure for its constitutionally and admissibility in court, the reviewing court must first make a determination of whether an impermissible suggestive procedure was used. State v. Bickham, 404 So.2d 929 (La.1981). Single photograph identification “should be viewed in general with suspicion”. State v. Martin, 595 So.2d 592 (La.1992) at p. 595, citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). However, even if an identification procedure is suggestive, the identification does not necessarily have to be suppressed. The suggestion procedure should only be suppressed when, given all the circumstances, it gives rise to a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Lee, 545 So.2d 1163 (La.App. 4th Cir.1989). In reviewing such a claim, the United States Supreme Court has enunciated a five (5) factor test to determine whether the identification was reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, supra.
At the motion to suppress the identification, Landry testified that he obtained information that the individual who sold him the heroin had been shot. As a result, Landry conducted a follow-up investigation in which he obtained the police report of the incident and a Bureau of Identification photograph of the shooting victim. From this photograph Landry positively identified defendant as the man who sold him the heroin on October 5, 1987.
In Martin, supra, an undercover officer bought drugs from a man he did not know. He completed a police report describing the man. About one month later, another officer showed him a picture of the defendant and asked him if he would identify him as the perpetrator. The officer positively identified the defendant. Our Supreme Court addressed the reliability of this out-of-court identification and found that a one photograph procedure was suggestive. The five factor test was applied to determine if the identification was nonetheless admissible as reliable. The court found it was not reliable because the officer had not found the photograph on his own and did not view the photograph at his leisure. The court concluded that the officer was under pressure to make an identification because his personnel records indicated his performance had slipped and that he had difficulty “making” big cases. The court also reviewed the officer’s testimony at the suppression hearing and at trial and noted numerous inconsistencies.
In the instant case, although there was an initial single photo identification, Landry was not pressured to identify defendant as the perpetrator. Landry himself found and identified the photograph of defendant as the individual who sold him the heroin. This fact, coupled with other evidence supports a finding, under the five factor test, that Landry’s out-of-court identification of defendant was reliable. Landry had an excellent opportunity to view defendant when defendant initially approached him and later in front of the Rose Tavern. Landry testified the lighting was good. His attention was focused on defendant and the drug transaction. He testified that at the time of the drug transaction, defendant was wearing a “Jeri-curl” hairstyle *960 which he was not sporting at the time of the trial.
Testimony concerning an out of court identification is permissible to support in-court identification. State v. McCarter, 577 So.2d. 816 (La.App. 2nd Cir.1991). Based on our review of the record, we find that Landry’s single photo out of court identification was reliable. His subsequent in court positive identification of defendant was not “tainted” nor constitutionally infirm.
Defendant also argues that the identifications of him as the perpetrator by Officers Evans and Fisher are equally unreliable. We disagree.
Both Evans and Fisher witnessed the transaction between defendant and Landry. Evans watched with binoculars from about one hundred (100) yards away and Fisher from thirty (30) or forty (40) feet away. Evans testified that he knew defendant prior to the incident in question by his nickname. He did not know his real name. Officer Fisher testified that he provided back up for Landry. He stated that he was positioned on top of an abandoned truck and witnessed the entire transaction. He also stated that defendant was wearing a “jeri-curl” hairstyle at the time of the drug transaction.
Based on the testimony of all three officers, it cannot be concluded that their identifications of defendant were unreliable.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
Defendant asserts he received ineffective assistance of counsel based on the following claims:
1) Defense counsel failed to adequately cross-examine witnesses at the identification suppression hearing.
2) Defense counsel failed to object to hearsay testimony and thereby breached the defendant’s right to confront his accusers.
3) Defense counsel failed to object to impermissible cross-examination by the district attorney.
4) Defense counsel failed to call material witnesses thereby denying the defendant his right to confront his accusers.
5) Defense counsel failed to object to erroneous jury instructions thereby denying defendant his sixth and fourteenth amendment rights.
6) Defense counsel’s direct examination of his client wholly prejudiced defendant and therefore was ineffective assistance of counsel.
Generally, ineffective assistance of counsel claims are more properly raised by application for post conviction relief. State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). However, if the record is sufficient, the reviewing court will consider the issue on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
Ineffective assistance of counsel claims are to be evaluated pursuant to the two part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Johnson, 582 So.2d 885 (La.App. 4th Cir.1991). Applying the Strickland test, a defendant must demonstrate (1) his attorney’s performance was deficient and (2) that the deficiency prejudiced defendant. Johnson, supra. A defendant must demonstrate that defense counsel made errors so serious that he was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland, supra. To prove the necessary prejudice, a defendant must show that, but for his attorney’s deficient performance, the outcome of the proceedings would have been different. State v. Jones, 555 So.2d 519 (La.App. 4th Cir.1989), writ den. 559 So.2d 1374 (La.1990).
CLAIM 1:
Defendant asserts defense counsel failed to cross-examine Officer Landry at the motion to suppress hearing. He suggests his attorney should have questioned Landry as to when the follow-up investigation took place, who was questioned and the extent of their reliability. He further suggests that Landry should have been questioned as to how Wanda West’s identi *961 fication of defendant as “Giggy” affected his subsequent identification.
Based upon the record before us it cannot be determined how the failure of defense counsel to extensively cross-examine Landry prejudiced defendant. The record contains no evidence as to what information would have been discovered that may have changed the verdict. This issue is more properly raised in an application for post conviction relief wherein the trial court may receive evidence pertaining to this claim. We cannot, at this time, determine the merits of this argument.
CLAIM 2:
Defendant claims that defense counsel failed to object to the allegedly inadmissible hearsay statement made by Landry that West told him defendant’s nickname was “Giggy”.
Hearsay statements are admissible if they form part of the res gestae. State v. Granier, 592 So.2d 883 (La.App. 4th Cir.1991), writ den. 600 So.2d 1334 (La.1992). The statement was made by West to Landry immediately prior to the drug transaction. As such the statement forms part of the res gestae and it was not error for defense counsel not to object to it.
In addition, defendant contends that he was entitled to invoke the presumption created by Louisiana Revised Statute 15:432[2] when the State failed to call West to testify and that defense counsel was ineffective by failing to do so. We disagree.
The record does not indicate that West was in custody nor has defendant demonstrated how he was prejudiced by defense counsel’s failure to invoke this presumption.
CLAIM 3:
Defendant contends defense counsel was ineffective by failing to object to questions asked by the State during the cross-examination of defendant relative to his status as a probationer and served only to paint defendant “in as bad a light as defense counsel would allow the State to do”.
Questioning a defendant as to his probation is far afield from a legitimate inquiry into facts which have a bearing upon his credibility as a witness. State v. Johnson, 368 So.2d 719 (La.1979). However, in the instant case, such an inquiry can hardly be considered prejudicial as defendant had already testified, on direct examination, that he had a prior narcotics conviction and stole to support his drug habit.
CLAIM 4:
Defendant contends defense counsel was ineffective because he failed to call Wanda West as a witness and because, during closing argument, he told the jury he did not call several other witnesses because he did not want to waste their time.
Suffice it to say, the record does not show how either of these “failures” by defense counsel prejudiced defendant. However, at a post conviction hearing, evidence may substantiate defendant’s argument. We are unable to dispose of this issue at this time.
CLAIM 5:
Defense counsel’s failure to object to the reasonable doubt jury charge is addressed in assignment of error 3:
CLAIM 6:
Defendant contends defense counsel was ineffective because his direct examination of defendant was prejudicial. We disagree.
The entire thrust of defendant’s testimony was that he never sold drugs but chose to steal to support his drug habit. Defendant testified that Landry’s identification of him as the perpetrator was a case of mistaken identity. In his attempt to convince the jury that he did not have to sell drugs for money, defendant testified in great detail as to the technique he used to shop lift thousands of dollars worth of merchandise including clothing, televisions, video records and microwave ovens. He even admitted to having a regular clientele for whom he stole who often told him what item they wanted and in which store it could be found.
*962 Ineffectiveness claims which fall within the ambit of trial strategy do not constitute ineffective assistance of counsel. Biene-my, supra. Counsel's decision to call defendant to testify falls within the ambit of trial strategy. Because this decision may appear to be a mistake in hindsight, does not mean counsel was ineffective. See, State v. Mistretta, 490 So.2d 462 (La.App. 4th Cir.1986).
This assignment of error is without merit.
ASSIGNMENT OF ERROR 3:
Defendant asserts that pursuant to the United States Supreme Court’s ruling in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), on remand, State v. Cage, 583 So.2d 1125 (La.1991), writ den., Cage v. Louisiana, — U.S. -, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991), the jury charge defining “reasonable doubt” was improper and warrants reversal of his conviction.[3] As previously noted, he also asserts that his attorney’s failure to object to the erroneous charge constitutes ineffective assistance of counsel.
The record shows no contemporaneous objection was made to the charge given by the trial court. Pursuant to State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ denied 588 So.2d 1110 (La.1991) this court will not consider an asserted error in giving a Cage charge in the absence of a contemporaneous objection. However, because a claim of ineffectiveness has been asserted we address the issue assuming a proper objection had been made.
In State v. Cage, 583 So.2d 1125 (La.1991), cert. den. — U.S.-, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991) our Supreme Court held that even if a Cage charge is given reversal is still not warranted unless the court concludes the error was not harmless.
In this case, three police officers positively identified the defendant as the perpetrator. The defendant admitted to being a drug user, to being in the area when the drug transaction occurred and to committing numerous thefts to support his drug habit. His only defense was that his nickname was “Gingy” not “Giggy”. Thus when Wanda West identified the drug seller as “Giggy” she was talking about someone else. The defendant admitted, however, that he knew Wanda West and had bought drugs from her. Given the overwhelming evidence against the defendant, it appears beyond a reasonable doubt that the erroneous jury charge did not contribute to the jury’s verdict.
Thus, given the overwhelming evidence of defendant’s guilt, any defect in the “reasonable doubt” jury charge constitutes harmless error, and the failure to object does not result in ineffective assistance of counsel.
For the reasons assigned above, defendant’s conviction and sentence are affirmed.
AFFIRMED.
JONES, J., dissents with reasons.

. Pursuant to a review for errors patent, this Court found the trial court erred in ordering defendant's sentence be served without benefit of parole and deleted that portion of the sentence. State v. Holmes, 551 So.2d 76 (La.App. 4th Cir.1989).

. LSA R.S. 15:432 creates a statutory presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him.

. The complained of definition of reasonable doubt given by the trial court is as follows:
"Under our law, reasonable doubt means a doubt which is based upon a reason. It must be substantial rather than speculative. It must be something that would cause a reasonable person to hesitate to act in the important affairs of one’s life. A reasonable doubt is a serious doubt. It’s an actual doubt for which you could give a good reason."