684 So.2d 74 (1996)
STATE of Louisiana
v.
Jake STERLING.
No. 96-K-1390.
Court of Appeal of Louisiana, Fourth Circuit.
November 13, 1996.
Rehearing Denied December 19, 1996.
Harry F. Connick, District Attorney, Laura S. Schneidau and David Groome, Assistant District Attorneys, New Orleans, for the State.
Hans P. Sinha, Orleans Indigent Defender Program, New Orleans, for Defendant.
Before BARRY, BYRNES and MURRAY, JJ.
BYRNES, Judge.
We grant the State's writ application requesting a review of the trial court's ruling granting the defendant Jake Sterling's motion to suppress the photographic identification. We reverse and remand.
On October 12, 1995 the defendant was indicted for first degree murder. On April 8, 1996 the court heard testimony on the motion to suppress identifications. The trial court denied the motion as to one witness and took *75 it under advisement as to the second witness. On April 29, 1996 the trial court granted the motion to suppress Sheila Jones' photographic identification of the defendant, and the State's writ application followed.
Amelia Martin, a sixteen-year old, and her mother, Sheila Jones, testified at the hearing. Ms. Martin stated that, while sitting on her front porch, she observed the defendant walk around the block a few times. She then saw the defendant shoot the victim, an elderly man who lived next door. The shooting occurred on May 20, 1996 at approximately 7:30 p.m.
On August 21, 1995 the police brought a photographic line-up to Ms. Martin. The detective told her that they had a suspect, but needed to identify him to be sure. The detective spread the photographs across the table. Ms. Martin picked out the photo of the defendant, stating that it was the man she saw.
Ms. Sheila Jones testified that she was inside at the time of the actual shooting. The children sitting on the front porch ran in, saying that a man had a gun and shot "Candy." Ms. Jones went outside and saw a man coming down the stairs. Ms. Jones stated that she did not have "long at all" to view the defendant. She got a look at his face because he turned and looked at her as he was going down the stairs.
On August 21, 1995 when the police brought the photographic line-up to Amelia Martin, her mother, Ms. Jones, was sitting next to her. After Amelia Martin identified the defendant, Ms. Jones also selected the defendant's photograph. Ms. Jones testified that she had also recognized another of the pictures and thought that maybe the other photograph was of the man who shot the victim but then identified the photo as being the picture of someone else who broke into the car in front of the door a few weeks before. After looking again, she selected the defendant's picture.
Ms. Jones related that the defendant wore jeans shorts and a t-shirt top. He was wearing an earring. Her daughter had testified that the man wore bluejean pants and a white t-shirt. Ms. Jones estimated that the man was around five-eight or five-nine. Both witnesses stated that the defendant was slender.
The mother, Ms. Jones, also testified that she was the one who called the police. She gave a description of the defendant to the police over the phone. Ms. Jones stated that she was also interviewed on another occasion and gave the police a description.
The defendant argues that the photographic line-up was suggestive because Ms. Jones was present while Amelia Martin made her identification. Furthermore, Ms. Jones found that two photographs looked familiar, but did not select the defendant's photo until after her daughter had. The State argues that, even if the procedure was suggestive, the identification is still reliable and should be admitted.
The defendant bears the burden of proving that an out-of-court identification itself is suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lee, 94-2584 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, writ denied 96-0477 (La.5/10/96), 672 So.2d 919. An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428. Even a suggestive out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy, 95-0899 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d. 102.
If the photographic identification is found to be suggestive, it must be determined whether, under all the circumstances, the suggestive procedure gave rise to the substantial likelihood of irreparable misidentification, for it is the likelihood of the misidentification which violates due process, not merely the suggestive identification procedure. State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, writ denied, 96-1019 (La.10/4/96), 679 So.2d 1377.
The United States Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree *76 of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Cockerham, 95-0172 (La.App. 4 Cir. 3/14/96), 671 So.2d 967, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363. Also to be considered under the totality of circumstances is the deterrent effect on police behavior so the police will guard against unnecessarily suggestive procedures for fear that their actions will lead to the exclusion of identifications as unreliable. Manson v. Brathwaite, supra.
In Manson v. Brathwaite, id., the United States Supreme Court held that while the identification procedure was suggestive since only one photograph was used, and while it was unnecessary since there was no emergency or exigent circumstance, the substantial likelihood of irreparable misidentification did not exist where the identification was made by a trained police officer who had a sufficient opportunity to view the suspect, accurately described him, positively identified his photograph, and made the photographic identification two days after the crime.
In Cockerham, supra, this court found that the photographic lineup identification was not unduly suggestive although only the defendant was dressed in prison uniform where the detective testified that the defendant's clothing was not readily identifiable as an Orleans Parish Prison uniform. Further, the identification was reliable because the victim had an opportunity to view the robbery, the photographic identification occurred one week after the first robbery, and the victim was positive in her identification.
In State v. Anderson, 517 So.2d 1231 (La. App. 4 Cir.1987), this court held that although the photographic identification by two victims simultaneously was highly suggestive, it did not taint the subsequent physical lineup identification where the second identifier said she was positive about her selection; she stated she was in no way influenced by the choice of the first identifier; the crime area was well lit; and the robbery took approximately 45 seconds. The robbery occurred in June 1986, the photographic selection occurred in July 1986, and the physical lineup occurred in August 1986.
In State v. Nguyen, supra, although together eight victims viewed the Vietnamese defendant who was in prison clothes, handcuffed to the co-defendant, and seated with non-Asian prisoners at a pretrial motion hearing, the appellate court found that the identification procedure was suggestive but the identifications were reliable. Although no victim previously could identify the defendant from a photographic book of Vietnamese males, and the description of the defendant was vague, the eight victims had ample opportunity to view the defendant during the commission of the armed robbery and attempted armed robbery, the victims' level of certainty was high, and the victims immediately recognized the defendant once they saw him in person, despite a lapse of six months.
In State v. Guy, supra, an officer told the eyewitness the name of the subject prior to the identification; however, that fact was not sufficient to make the entire identification unduly suggestive, and it was reliable although two months elapsed between the murder and the identification.
In State v. Green, 27,652 (La.App. 2 Cir. 1/24/96), 666 So.2d 1302, the appellate court held that the witness' failure to identify the suspect at a pretrial lineup was not grounds to bar the witness' in-court identification. Rather, it affected the weight of the testimony. The court noted that evidence may be introduced to explain any discrepancy between the witness' failure to identify the suspect at the pretrial lineup and the in-court identification.
In State v. Lee, supra, this court found the photographic lineup identification was not suggestive although the witness stated she had seen a news report with the suspect's picture two days before, but she did not get a good look at the defendant. This court found that there was not a substantial likelihood of misidentification where the defendant was shown clean-shaven but the other fill-ins actually had light mustaches which were barely discernable.
*77 In State v. Washington, 95-771, (La.App. 5 Cir. 2/14/96), 670 So.2d 1255, within hours of the car-jacking, second degree kidnapping and aggravated burglary, the detective arrived on the scene and showed two photographs to the three witnesses. One of the photographs pictured the defendant and the other pictured the defendant and an unknown male. All three witnesses identified the defendant as one of the perpetrators. The appellate court held that even if the photographic identification was suggestive, nonetheless it was reliable where the witnesses testified that the apartment was well-lit, they had concentrated on the defendant's facial features, and they positively identified the defendant as one of the perpetrators with a high degree of certainty.
In the present case, having just been told of the shooting, Ms. Jones's attention was fully focused on her neighbor's porch and on the defendant. She had sufficient opportunity to see his face. There was nothing covering the perpetrator's face. It was around 7:30 p.m. on May 20, 1995, Ms. Jones testified that it was still daylight, and the streetlights had not yet come on. Ms. Jones related that she had already picked out the defendant's photograph in her mind before her daughter identified the defendant's photograph.
Ms. Jones explained that she saw the perpetrator but not the shooting. The police did not realize that Ms. Jones was a witness because she said she did not see the shooting, and therefore the officers were in good faith when they presented the line-up to mother and daughter at the same time. Therefore, suppressing the identification will not serve the purpose of deterring improper police conduct. The three month lapse between the crime and the photographic line-up is not so long as to make the identification unreliable. Detective Daniel McMullen testified that both Ms. Martin and Ms. Jones did not indicate that they were not positive or that they could not make an identification.
Considering the totality of circumstances, the photographic identification, even if suggestive, nonetheless produced a reliable identification. At trial the defendant may introduce evidence concerning the circumstances of the identification for the purpose of enabling the jury to determine the weight to be given to the witnesses' photographic identification of the defendant.
Accordingly, the ruling of the trial court is reversed, and the defendant's motion to suppress Ms. Jones' photographic identification is denied. The case is remanded for further proceedings.

WRIT GRANTED; REVERSED & REMANDED.
MURRAY, Judge, dissenting:
As the majority concedes, presentation of a photographic line-up to two witnesses simultaneously has been found to be highly suggestive. State v. Anderson, 517 So.2d 1231, 1233 (La.App. 4th Cir.1987). However, the majority fails to accord proper deference to the trial court's determination that in this case, the suggestive procedure resulted in a significant likelihood of misidentification.
A review of Ms. Jones' testimony under the Manson v. Brathwaite factors establishes that the district court's decision is fully supported by the evidence. Although Ms. Jones' attention was focused on the perpetrator, she had very little opportunity to see his face because he was running down the steps of the house to her left, and only briefly turned to look in her direction.[1] Therefore, even though it was still daylight, she had only a few seconds to glimpse him before he reached the sidewalk and turned his back to her. Ms. Jones testified she had never seen the assailant before. There was a three-month delay between the incident and Ms. Jones' review of the photographic line-up. Although she said she had twice previously described the perpetrator to the police, her description was apparently not recorded and therefore cannot be assessed for accuracy.
*78 Most importantly, Ms. Jones' testimony concerning her level of certainty in her identification is equivocal. She acknowledged that she initially selected the photograph of another man, but later testified that she had clarified the difference between the two photos "in her mind" before she watched her daughter point to the defendant's picture. The evaluation of this testimony concerning the witness' mental process, necessary to a determination of the reliability of Ms. Jones' identification, is best left to the trial court.
The majority insists that suppression of this identification would serve no deterrent purpose because the police did not deliberately permit Ms. Jones to participate in the line-up with her daughter. However, an impermissibly suggestive identification procedure that results from police carelessness, as here, is just as likely to produce a misidentification as one that is intentionally suggestive. In this case, the State easily could have avoided any problems if the investigating officers had recorded the names of all witnesses, or merely asked "Did anyone else here see the perpetrator?" before the photographs were presented for viewing. Thus, suppression of this identification would encourage police adherence to minimal investigatory and recordkeeping standards.
Finally, Manson v. Brathwaite requires that we consider the effect of suppression of an identification on the administration of justice. Here, the trial court determined that the reliability of Ms. Martin's identification was unaffected by her mother's presence and thus may be presented at trial. In addition, it appears that, at the time of the hearing at issue here, the State was attempting to locate a third identification witness. Suppression of Ms. Jones' testimony will thus have little or no effect on the State's ability to establish its case against Mr. Sterling.
Therefore, unlike the cases cited by the majority, consideration of the Manson v. Brathwaite factors establishes no basis for this Court's reversal of the decision below. Only one of the five factors, the witness' degree of attention, weighs in favor of a finding that Ms. Jones' identification is reliable despite the corrupting influence of observing her daughter's selection of the defendant's photograph. Because the trial court was in the better position to assess Ms. Jones' testimony, its decision to grant the motion to suppress is entitled to great weight and should not be set aside. State v. Lee, 545 So.2d 1163, 1167 (La.App. 4th Cir.1989). Therefore, I respectfully dissent.
NOTES
[1] This Court cannot tell how far away the perpetrator was from Ms. Jones; her approximation that the distance was "like from here to this lady here" was clarified by the assistant district attorney as "from the witness stand to the other side of the State's table." However, the trial court was in the position to consider the distance in assessing Ms. Jones' opportunity to view the assailant.