732 So.2d 97 (1999)
STATE of Louisiana
v.
Quantrell CAGER.
No. 97-KA-1877.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 1999.
*99 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorneys for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III, Judge Pro Tempore JAMES C. GULOTTA.
McKAY, Judge.

STATEMENT OF THE CASE
By grand jury indictment dated January 25, 1996, defendant was charged with one count of second degree murder; and, he pleaded not guilty. On May 5-7, 1997, a twelve-member jury that found the defendant guilty as charged. On May 21, 1997, the trial court denied defendant's motion for new trial and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of *100 sentence. The defendant now appeals this conviction.

STATEMENT OF THE FACTS
On December 18, 1995 at 11:00 a.m., the body of Brian Blaire was found in front of 3623 St. Bernard Avenue. He had been shot once in the face and once in the neck. A .38 caliber revolver was underneath his body, and the gun's cylinder contained two live cartridges and no spent cartridges. No spent casings were found at the scene. Bullet fragments removed from his body were determined to have been .38 caliber bullets, but the bullets were not fired from Blaire's gun.
Corey Mercadel testified that the victim was his nephew and that at 7:00 or 8:00 on the morning of the shooting, defendant, who lived at 3621 St. Bernard, threatened to "get them" for breaking into his house. Mercadel admitted to several prior convictions and that he was in jail at the time of trial. He denied receiving any favors in exchange for his testimony.
Tamara Anderson testified that she lived at 3627 St. Bernard Avenue and that she saw defendant and Blaire outside in the courtyard talking to each other. She further testified that she saw defendant shoot Blaire once and that when Blaire reached for his gun, defendant shot him again. She stated that defendant was dressed all in black and that she saw defendant's face as he walked away. Ms. Anderson admitted that about a week after the shooting, she had to be hospitalized for two months because she was hearing voices and was depressed. She also admitted that Blaire was a friend and had lived with her and her family.
Kay Kimble, who lived at 3619 St. Bernard Avenue, testified that she knew defendant and that when she was returning home from shopping, she saw defendant shoot Blaire. She later met with detectives from the Homicide Division and chose defendant's picture out of a photographic lineup. She also stated that she told the police that she knew it was defendant who shot Blaire because she saw defendant's wife get out of their car and go over to defendant after the shooting. She admitted that the reason she had previously stated that she had not actually seen the shooter's face is because she was afraid. She testified that she did see the shooter's face and that defendant was the shooter. Ms. Kimble further testified that defendant was dressed all in black. She admitted that she received five hundred dollars from Crime Stoppers about a month after the shooting, and she stated that she would not receive any additional money for testifying at trial.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant complains that the trial court erred in not allowing him to introduce certain evidence to impeach the credibility of three prosecution witnesses, Corey Mercadel, Tamara Anderson, and Kay Kimble. He argues that this violated his right to confront and cross-examine the witnesses against him.
With regard to the testimony of Mercadel, defendant asserts that he was prevented from questioning Mercadel about any deals he received from the State in exchange for his testimony and that the trial judge admonished the jury to disregard any testimony about deals. However, a review of the trial transcript shows that defendant was not prohibited from asking Mercadel about any deals. Mercadel admitted that he was in jail, and he replied no when asked by defense counsel if he received any favors from the prosecution in return for his testimony. When he was asked about his pending charges for which trial had apparently been continued, the State objected, which was sustained by the court stating that lots of cases were continued and that the jury was to disregard the question to the extent that it involved continuances. Defense counsel *101 was still allowed to ask Mercadel if he had asked the prosecutor for help on the pending charges, and Mercadel denied asking for any help. Hence, there is no merit to defendant's argument that his cross-examination of Mercadel was improperly restricted or that the trial judge ordered the jury to disregard testimony about deals.
Defendant also argues that his right to cross-examine Tamara Anderson was violated when the trial court held that her psychiatric records were inadmissible. He asserts that the records were admissible because it was likely that the records contained both inconsistent statements that she made about the incident and evidence concerning her inability to perceive and recall. He further argues that he was entitled to use extrinsic evidence, in the form of the psychiatric records, to prove that Ms. Anderson's mental illness created a defect in her capacity to perceive the facts that she purported to have observed. He also states that it appeared that the trial judge did not make an in camera inspection of the records.
La. C.E. art. 607(D)(1) provides that extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness. La. C.E. art. 608 provides that a witness' credibility may be attacked by evidence relating to their general reputation for truthfulness, but not by extrinsic evidence of particular acts, vices, or courses of conduct. In State v. Morris, 429 So.2d 111 (La.1983), the Supreme Court stated that mental abnormality either at the time of observing the facts or at the time of testifying will be provable on cross-examination or by extrinsic evidence as bearing on credibility. See also La. C.E. art. 607(B).
La. C.E. art. 510(C)(1) provides that in a criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication made for the purpose of advice, diagnosis, or treatment of his health condition between or among himself, his representative, and his physician or psychotherapist and their representatives. Article 510(C)(2) sets forth six instances in which the privilege does not apply, but none of these instances apply to Ms. Anderson's psychiatric records.
In State v. Baker, 582 So.2d 1320 (La. App. 4th Cir.1991), writ denied 590 So.2d 1197 (La.1992), cert. denied 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992), this court held that a witness' psychiatric records were not admissible as impeachment evidence because they were privileged and did not constitute evidence of her general reputation for truthfulness.
The psychiatric records defendant sought to introduce into evidence were privileged, and they did not bear on Ms. Anderson's ability to perceive at the time of the murder because her psychiatric problems did not develop until after the murder. Ms. Anderson was cross-examined extensively about her hospitalization; and, she admitted that she was hospitalized because after the murder, she had started hearing voices. She also admitted that she had been hospitalized a second time following the death of her infant a few months before trial. She also admitted that at the time of trial, she was no longer taking her medication. Also, contrary to the assertion in defendant's brief, the trial judge stated that he had thoroughly reviewed Ms. Anderson's psychiatric records before ruling that they were not admissible for impeachment purposes. The trial court did not err in refusing to admit Ms. Anderson's psychiatric records into evidence.
Defendant's third complaint under this assignment of error is that he was denied the right to confront and cross-examine Kay Kimble about the reasons for the changes in her testimony when the trial court quashed the subpoena duces tecum that he served on Crime Stoppers. He argues that this evidence would have impeached Ms. Kimble by showing that her testimony was influenced by external forces and that *102 he should not have been prohibited from putting on testimony as to benefits Ms. Kimble would have received from her testimony. Ms. Kimble admitted receiving five hundred dollars from Crime Stoppers, but she further testified that she did not expect to receive any more money from the organization.
The trial court quashed the subpoena duces tecum on the basis of La. R.S. 15:477.1. That statute provides that no person shall be required to disclose, by way of testimony or otherwise, a privileged communication between a person who submits a report of a crime to a crime stoppers organization and the person who accepts the report on behalf of the organization or to produce under subpoena any records, documentary evidence, opinions, or decisions relating to such privileged communication. In State v. Gibson, 505 So.2d 237 (La.App. 3d Cir.1987), writ denied 508 So.2d 66 (La.1987), the defendant sought information, by way of subpoena duces tecum, of payments made. The trial court quashed the subpoena, and the Third Circuit affirmed. The court stated that La. R.S. 15:477.1 was very broad and that inasmuch as the information subpoenaed was part of the record of Crime Stoppers, it was privileged. But the court further stated that even if the information were not privileged, the error was harmless when the sheriff testified that a reward of one thousand dollars was paid. Therefore, under State v. Gibson, supra, the trial court did not err in quashing the subpoena duces tecum for the records from Crime Stoppers concerning any payments to Ms. Kimble because financial information constitutes part of the organization's records. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains that the trial court erred in denying his motions for mistrial due to the State's repeatedly referring to inadmissible other crimes evidence and to defendant's allegedly bad character. Defendant asserts that the State deliberately elicited testimony from Detective Gary Marchese and Corey Mercadel about other crimes alleged to have been committed by defendant. He also argues that the State referred to inadmissible other crimes evidence in its closing argument.
The defendant also argues that the trial court erred in not granting a mistrial due to the State's deliberately eliciting testimony from Marchese about other crimes alleged to have been committed by defendant. A review of the trial transcript shows that defendant never moved for a mistrial at any point in the proceedings even though the trial court sustained defendant's objections. When the trial court sustains a defendant's objection to a remark made by the State but he fails to request an admonition or a mistrial, the defendant cannot raise a claim on appeal that the comment was prejudicial. State v. Breaux, 598 So.2d 719 (La.App. 4th Cir. 1992).
Defendant also complains that the State deliberately attempted to elicit testimony from Mercadel about other crimes allegedly committed by him, but this argument also is without merit. A review of the trial transcript shows that after Mercadel testified that he and Blaire used to hang out at the corner of Gibson and Sere Streets, the prosecutor asked him what they were doing out there. Mercadel refused to answer and the defendant objected which resulted in the question being withdrawn by the State. The prosecutor next asked Mercadel several questions about who was out there with him at the corner, and Mercadel included defendant in that group. There was no objection to this line of questioning. The prosecutor then asked him about defendant's brother and what the brother's name was, and defendant objected without specifying the basis for the objection. The trial court overruled the objection. The failure to object to Mercadel's testimony about defendant's presence at the corner of Gibson and Sere precludes appellate *103 review of this particular issue. La.C.Cr.P. art. 841.
Additionally, the record shows that defendant did not move for a mistrial based on the improper reference to other crimes evidence during the State's closing argument. The trial court sustained defendant's objection to the prosecutor's stating that Mercadel had testified that there was drug-dealing going on in the courtyard, and the trial court admonished the jury to disregard the prosecutor's comment. Because defendant failed to move for a mistrial after the trial court sustained his objection to the prosecutor's comment, he cannot raise on appeal the claim that the comment was prejudicial. State v. Breaux, supra. The trial court cannot be in error for denying relief that defendant did not request. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, defendant complains that the trial court erred in not granting a mistrial due to prosecutorial misconduct, namely the withholding of firearm and fingerprint information and inflammatory and prejudicial closing argument. He argues that the fingerprint and firearm evidence was favorable to him and should have been disclosed before trial. He also argues that a mistrial should have been granted because the State's closing argument impermissibly referred to harm done to children, the promotion of justice, and the defense's promotion of subtle confusion.
The State must disclose to the defense evidence which is favorable to the defendant and is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Phillips, 92-1063 (La.App. 4th Cir. 2/29/96), 670 So.2d 588, writ denied 96-2131 (La.9/5/97), 699 So.2d 85. Although the prosecutor is not required to deliver his entire file to defense counsel, he must disclose evidence favorable to the accused that, which if suppressed, would deprive the defendant of a fair trial. State v. Rosiere, 488 So.2d 965 (La.1986).
In United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the United States Supreme Court stated that evidence was material only if there were a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. The court further stated that a "reasonable probability" was a probability sufficient to undermine confidence in the outcome. In Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the court further discussed the concept of materiality and stated that a showing of materiality did not require a demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The court also stated that the question was not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, which was understood as a trial resulting in a verdict worthy of confidence. The court also stated that the defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.
The evidence at issue consists of a report showing that there were no finger-prints on the gun found in Blaire's possession and that the gun was functional. This report was not given to the defense until the first day of trial. The trial court denied defendant's motion for mistrial on the grounds that he was not prejudiced by the late production of the report and that the lack of fingerprint evidence was not Brady material. On the third day of trial, the State and the defense stipulated to the contents of the report, namely that the bullet fragments removed from Blaire's body did not come from his gun and that his gun was functional.
*104 Defendant asserts that this evidence was important to his defense, but does not specify in what way it was important or how it is exculpatory. Defendant made no claim of self-defense, and none of the witnesses who saw the shooting testified that they saw Blaire actually fire his gun even though they saw him reach for it. The crime scene technician who recovered the weapon testified that there were no spent casings in the gun. Although the State should have turned over the report to defendant before trial, it does not appear that defendant was prejudiced by its tardy production. The contents of the report were not material evidence in that there was not a reasonable probability that the result of the trial would have been different or that there was a probability sufficient to undermine confidence in the outcome of the trial.
Defendant's second complaint under this assignment of error deals with various comments made by the State in its closing argument which he asserts were prejudicial and that a mistrial was required. La.C.Cr.P. art. 774 provides that the argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the applicable law. Article 774 further states that the argument shall not appeal to prejudice. A conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict; and, as much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the argument and have been instructed repeatedly by the trial judge that the arguments of counsel are not evidence. State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
The first complained-of comment came when the prosecutor referred to the visit to the crime scene the jurors made and asked if they saw all the little children out there. The trial court overruled defendant's objection. Defendant asserts that with this comment, the prosecutor was allowed to argue about harm done to little children in the area; but this is a mischaracterization of the comment. Prior to the objected-to comment, the prosecutor was talking about how Ms. Anderson was a hero for testifying, that the shooting occurred in broad daylight, that the crime scene photographs showed a lot of people in the area, and that when the jurors went out to the scene there were a lot of people around. Looked at in context, the argument does not appear to be an appeal to prejudice as defendant asserts.
The next comments about which defendant complains are the prosecutor's stating that "we've got to work together for justice." The first time the prosecutor made this comment occurred when he spoke about Ms. Kimble's coming forward and how she did her job and that it was time for the jurors to do theirs. The second instance came when the prosecutor spoke about how he was confident that the jurors would find defendant guilty by a unanimous verdict. These comments do not appear to be an appeal to prejudice that influenced the jury and contributed to the guilty verdict.
The next comment to which defendant objected was the prosecutor's reference to "subtle confusion" by defendant and that the only thing defense counsel could do was to confuse the jurors. Although some could perceive this remark as improper, it was not so inflammatory and prejudicial as to have influenced the jury and contributed to the verdict.
Defendant also complains that the prosecutor asked the jurors give to defendant the same sympathy he gave Blaire when he "butchered" him. A review of the transcript shows that defendant did not object to this comment. Therefore, appellate review is precluded. La. C.Cr.P. art. 841.
*105 Defendant further complains that during rebuttal argument, the prosecutor stated that defense counsel knew why defendant did not kill Mercadel and Blaire when he saw them earlier in the day and that was because she (presumably meaning defense counsel) had talked to Mercadel. The trial court sustained defendant's objection and admonished the jurors to rely on their memories and to disregard the last comment. Defendant did not request a mistrial after the trial court sustained his objection; and, because he failed to request a mistrial, defendant cannot now complain of any error. State v. Chambers, 95-0898 (La.App. 4th Cir. 12/28/95), 666 So.2d 716, writ denied 96-1699 (La.7/30/97), 697 So.2d 593.
Defendant's final complaint deals with the trial court's overruling his objections to several comments by the prosecutor in which he asked the jurors to put themselves in the victim's place. An argument, which attempts to have the jurors think of themselves as crime victims, is prejudicial. State v. Bradley, 516 So.2d 1337 (La.App. 4th Cir.1987). Although the prosecutor's comments could be construed as prejudicial, they do not appear to have been so prejudicial as to have influenced the jury and contributed to the verdict. Accordingly, this assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR NOS. 1 & 2
In these pro se assignments of error, defendant complains that the grand jury indictment is defective and that his counsel was ineffective for not raising this issue. He argues that the indictment is fatally defective because it failed to include a critical statutory element of the offense, namely that he had the specific intent to kill or inflict great bodily harm.
The indictment in the present case follows the short form set forth in La.C.Cr.P. art. 465(A)(32) for a charge of second degree murder. The use of short form indictments is constitutionally valid. State v. Bourque, 622 So.2d 198 (La.1993). Moreover, defendant filed a motion for a bill of particulars and asked the State to specify upon which section, part, or paragraph the prosecution was based. The State responded that the prosecution was based on La. R.S. 14:30.1(A)(1). This particular provision states that second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Thus, defendant was adequately informed of the nature of the charge against him prior to trial. The indictment was not defective. Consequently, his counsel was not ineffective for failing to raise this issue. These assignments of error are without merit.
AFFIRMED.