748 So.2d 1192 (1999)
STATE of Louisiana
v.
David MARTELLO.
No. 98-KA-2066.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
*1195 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant.
Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, and Judge ROBERT A. KATZ.
KLEES, Chief Judge.
Defendant David Martello was charged by bill of information on July 1, 1997, with armed robbery, a violation of La. R.S. 14:64. Defendant pleaded not guilty at his July 3, 1997, arraignment. The trial court denied defendant's motions to suppress the identification and evidence on July 18, 1997. A twelve-person jury found defendant guilty as charged on October 7, 1997. On October 29, 1997, the State filed a habitual offender bill of information, to which defendant pleaded not guilty. Defendant was adjudicated a third-felony habitual offender on November 21, 1997. On December 29, 1997, defendant was sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction and sentence.

FACTS
Kiyana Mintrel Johnson testified that, on June 6, 1997, she was working as a pizza delivery driver for the Pizza Hut located at S. Jefferson Davis Parkway and Xavier South Street. At approximately 8:00 p.m. that evening, she proceeded to deliver a "Meat-Lovers special" pizza to what she believed was a residence located at the corner of Live Oak and Fig Streets. She went to that location and found an apartment building. Johnson first went to an upstairs apartment, not knowing who had ordered the pizza. Anthony Martello, whom she later learned was defendant's brother, answered the door and informed her that his sister who lived downstairs had probably ordered the pizza. At the downstairs apartment, a little girl came to the door with ten dollars in her hand. Johnson gave her the pizza and sixteen cents in change. As Johnson was leaving, Anthony Martello was coming down the outer stairs with a plate in his hand. Johnson asked if he was going to get some food, and Anthony replied in the affirmative. Johnson started to return to her car. Defendant suddenly jumped out of the bushes with a knife, put the knife to Johnson's stomach, and ordered her to "give it up." As Johnson backed away from the knife "scared to death"she slipped and fell. She asked defendant what he wanted, and he said: "Give me your money." Johnson said she reached into her left front pocket, and gave defendant fourteen dollars, the remaining paper currency from the fifteen dollar "bank" she had been issued by Pizza Hut. Johnson said it was still daylight, that she had been close to defendant-what the record reflected *1196 was a distance of one and one half feet-and that she had gotten a good look at him. After defendant took the money, he ran away. At that point, Anthony Martello came running up and told Johnson he was sorry. Defendant's sister telephoned police, and Johnson reported the crime to responding officers. Approximately fifteen or thirty minutes after Johnson returned to her Pizza Hut, police notified her to return to the scene. Two police cars were in the middle of the street, and Johnson parked behind them. Defendant was removed from one police car, and Johnson positively identified him as the person who had robbed her. She said there was no doubt in her mind that it had been the defendant. She said police officers did not tell her to identify defendant, or offer her a reward or anything in exchange for her identification. She had originally described the person who robbed her as wearing a dingy white T-shirt, dark pants and white tennis shoes. When she identified defendant, he was wearing only dark pants. She identified clothing in evidence as looking like what defendant was wearing at the time of the robbery.
On cross-examination, Johnson said police took defendant out of the police car for identification, and put a spotlight on him. She admitted that she knew the person in the spotlight was the person police were asking her to identify. Johnson stated that defendant's dark pants had no particular identifying marks on them. She said she identified a knife shown to her by police as looking like the one defendant used in the robbery. She said she told police the person who robbed her had a "Don King-style" haircut. She said defendant had cut his hair as of the time of trial. Johnson admitted that she knew defendant was sitting at the defense table when she identified him in court as the person who robbed her. Johnson said she could not recall whether defendant had a mustache at the time of the crime, but admitted that he had a light one at trial.
New Orleans Police Detective Kevin Balancier testified that, when he arrived on the scene, the victim was being interviewed by another officer. Det. Balancier said defendant's brother, Anthony Martello, was at the scene. Det. Balancier and Officer David Duplantier searched nearby, but found no one. After returning to the police station, Officer Duplantier telephoned defendant's brother, Anthony. As a result of this conversation, the officers went to a residence at 2917 Live Oak Street, owned by defendant's mother. Defendant answered the front door, wearing dark pants. Det. Balancier described defendant's hair as a "wild bush," "[k]ind of straight and wild." Det. Balancier said that next to the front door was a television set with a buck knife sitting on top. Det. Balancier identified the knife in evidence and said the victim had positively identified it as the knife used by defendant to rob her. Officer Duplantier retrieved a dingy white shirt out of the residence. Det. Balancier said the victim said the person who robbed her had been wearing a white shirt with writing on it. Det. Balancier said that, after the victim returned to the scene, he removed defendant from the police car, and stood him up with the lights shining in his eyes.
On cross examination, Det. Balancier said there was a white female present in the abandoned residence with defendant. He said the knife was within the doorway, and that it was secured for safety reasons. Det. Balancier stated that the victim said the knife used by defendant was either a hunting knife or a buck knife. He admitted that defendant was the only person presented to the victim for identification.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the trial court erred in failing to grant a mistrial based upon the State's use of leading questions.
La.C.Cr.P. art. 775 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a *1197 fair trial, or when authorized by Article 770 or 771.
None of the provisions of La. C.Cr.P. art. 770 or 771 are applicable to the facts of the instant case. Mistrial is an extreme remedy which, except for instances in which the mandatory mistrial provisions of La.C.Cr.P. art. 770 are applicable, should only be used when substantial prejudice to the defendant is shown. State v. Castleberry, 98-1388 (La.4/13/99), ___ So.2d ___, ___, 1999 WL 213069, cert. denied, ___ U.S. ___, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). The standard to judge whether a trial court should grant a mistrial is whether the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of fair trial. State v. Johnson, 94-1172, p. 3 (La.App. 4 Cir. 12/15/94), 648 So.2d 43, 44, citing State v. Smith, 433 So.2d 688, 696 (La.1983). A trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to ensure a fair trial when there are no specific statutory grounds for a mandatory mistrial, and the trial court's ruling will not be disturbed on review absent an abuse of discretion. State v. Lewis, 95-0412, p. 4 (La.App. 4 Cir. 9/28/95), 662 So.2d 77, 79, writ denied, 95-2625 (La.2/2/96), 666 So.2d 1088. The determination of whether prejudice has resulted so as to require mistrial lies in sound discretion of the trial court. State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053.
Defendant claims that on at least six occasions defense counsel found it necessary to object to leading questions posed by the prosecution. However, what defendant first cites in his brief as a leading question, was a question he objected to on the grounds of relevance. The prosecutor had asked the victim: "The family members called the police, correct?" Defense counsel objected on relevancy grounds, but the trial court sustained the objection on the ground that it was a leading question. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error, stating the specific ground of the objection, and he is limited on appeal to that ground articulated at trial. La.C.Cr.P. art. 841(A); State v. Buffington, 97-2423, p. 9 (La.App. 4 Cir. 2/17/99), 731 So.2d 340, 346, quoting State v. Chisolm, 95-2028, p. 6 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195. More importantly, defense counsel did not move for a mistrial or request an admonition after the trial court sustained his objection to the question. Accordingly, he cannot now complain of error regarding the question. See State v. Cager, 97-1877, p. 12 (La.App. 4 Cir. 3/24/99), 732 So.2d 97, 105, writ denied, 99-1161 (La.10/1/99), 748 So.2d 433. State v. Chambers, 95-0898, p. 12 (La.App. 4 Cir. 12/28/95), 666 So.2d 716, 723, writ denied, 96-1699 (La.7/30/97), 697 So.2d 593.
The prosecutor next asked the victim: "Who called the police and identified the perpetrator?" The victim answered: "His sister." At this point defense counsel objected, the trial court sustained the objection, and defense counsel requested a bench conference. The trial court again stated that it sustained the objection, and at that time admonished the jury to disregard the comment. Defense counsel apparently moved for a mistrial during the bench conference, which was off the record, and the trial court denied the motion on the record. Defense counsel objected to the ruling. Considering this one leading question, and the fact that the trial court admonished the jury to disregard it, it cannot be said that defendant suffered such substantial prejudice that he was deprived of any reasonable expectation of a fair trial. The trial court did not abuse its discretion in denying defendant's motion for a mistrial.
Defendant points to two leading questions by the prosecutor during his examination of Det. Balancier, where the prosecutor first asked: "Was Anthony Martello present?" to which Det. Balancier replied: "Yes, he was." The prosecutor *1198 then asked: "And that's the defendant's brother?" to which the detective replied: "It is." Defense counsel objected to the leading nature of the question or questions. The trial court sustained the objection, cautioning the prosecutor not to lead his witnesses. However, defense did not request an admonition or mistrial. Accordingly, defendant cannot complain of any prejudice as a result of the questions. Cager, supra; Chambers. Moreover, defendant claims prejudice because the State was "obviously trying to bring out information adduced during the motion hearing" that defendant's brother had known that defendant was the perpetrator of the armed robbery. The fact that the jury heard that defendant's brother was present when Det. Balancier arrived at the robbery scene did not in any way alert the jury that the brother had also apparently fingered defendant as the perpetrator. Therefore, defendant suffered no prejudice from these two leading questions and answers thereto.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant claims the trial court erred in denying his motion to suppress the identification.
This court recently set forth the applicable law pertaining to out-of-court identifications in State v. Brown, 98-0510, p. 7 (La.App. 4 Cir. 7/14/99), 744 So.2d 93, 1999 WL 521742, as follows:
When reviewing an out-of-court identification procedure for its constitutionality and its consequent admissibility, the court must first make a determination of whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Hankton, 96-1538 (La.App. 4 Cir. 9/16/98), 719 So.2d 546, writ denied, 98-2624 (La.1/29/99), 736 So.2d 828; State v. Sterling, 96-1390 (La.App. 4 Cir. 11/13/96), 684 So.2d 74. If the court finds the identification suggestive, it must then decide, under the totality of the circumstances, if the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Manson, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; Prudholm; Hankton; Sterling.

In Manson, the Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Hankton; Sterling. As noted by this court in Sterling: "The defendant bears the burden of proving that an out-of-court identification itself is suggestive, and that there was a likelihood of misidentification as a result of the identification procedure. [citations omitted] An identification procedure is unduly suggestive if it focuses attention on the defendant." 684 So.2d at 75.
In the instant case, the victim identified defendant in a one-on-one identification-the victim was the only witness, and defendant was the only person presented for identification. One-on-one identifications generally are not favored, but they are permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the crime has been committed and has been returned to the crime scene. State v. Nogess, 98-0670, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 134; State v. Hunter, 92-2535 (La. App. 4 Cir. 4/13/95), 654 So.2d 781, writ denied, 95-1217 (La.10/6/95), 661 So.2d 464. Such identifications have been upheld because prompt confrontation between a defendant and victim promotes fairness by assuring the reliability of the identification-while the victim's memory is fresh-and the expeditious release of innocent *1199 suspects. State v. Short, 96-2780, p. 5 (La.App.11/18/98), 725 So.2d 23, 25, writ denied, 99-0198 (La.5/14/99), 745 So.2d 11, 1999 WL 334873. A one-on-one identification is not suggestive per se. See State v. Valentine, 570 So.2d 533 (La.App. 4th Cir. 1990).
At the motion to suppress hearing, New Orleans Police Officer David Duplantier testified that, when the victim arrived back at the scene after defendant had been apprehended, he first showed her the knife seized from the residence in which defendant was found. Det. Balancier then removed defendant from a police car, and defendant was illuminated with a spotlight. The victim was taken to the rear of the police car, and she identified defendant. At trial, Det. Balancier testified that he did not offer the victim anything in exchange for her identification. The victim testified at the motion to suppress hearing that police did not force, threaten or coerce her into making the identification, nor promise her anything in return. She testified similarly at trial.
Other than the fact that the identification was a one-on-one identification, there is little evidence that the identification procedure was suggestive. Defendant was even shirtless, appearing differently than he did at the time of the robbery. However, the victim testified at trial that the officer who displayed the knife to her prior to viewing defendant, informed her that the knife had been inside of "his house." While it is somewhat unclear, this could have implied that the knife belonged to the person she was subsequently asked to identify.
Nevertheless, even assuming that the identification procedure was suggestive, a review of the Manson factors shows that the identification procedure was reliable. The victim said it was daylight when the robbery occurred, and that she was one and one-half feet away from defendant during the robbery; she had an excellent opportunity to view him. The victim testified that her attention was focused on defendant during the robbery. The witness accurately described defendant's shirt, pants and wild hair style, although her description of the knife used by the perpetrator was not as accurate. The victim had no doubt in her mind that defendant robbed her. The victim said the robbery occurred possibly before 8:00 p.m., and Officer Duplantier testified that she identified defendant at 9:44 p.m., less than two hours after the robbery. The trial court properly denied defendant's motion to suppress the identification.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant claims the trial court erred in denying his motion to suppress the evidence.
On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La. App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. Jones, supra.
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibits unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions.
State v. Stan, 97-2195, p. 5 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, 85, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762, quoting State v. Basile, 97-1162, p. 5 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, 1065, writ denied, 97-2503 (La.12/1/97), 706 So.2d 455. "Exceptions to the warrant requirement are carefully drawn and the State must show that exigencies justify the intrusion." State v. Tanner, 96-0708, p. 7 (La.App. 4 Cir. 5/21/97), 696 So.2d 111, *1200 115, writ denied, 97-1665 (La.11/21/97), 703 So.2d 1306.
In the instant case, the knife allegedly used by defendant in the armed robbery, and the T-shirt allegedly worn by defendant during the commission of the robbery, were seized from defendant's residence and introduced into evidence. Officer Duplantier testified at the motion to suppress hearing that he was aware another individual was in the residence with defendant when he knocked on the door. After defendant opened the front door and was taken into custody by Det. Balancier, Officer Duplantier shined his flashlight into the front room, from his position on the porch, and noticed the knife sitting on top of a console television set located just inside the front door. Officer Duplantier said that after he secured the knife, he checked for the other individual who was supposed to be inside of the residence, which was without electricity or running water. After putting defendant into a police unit, he checked the record of the white female found inside, and she was released to leave the scene. Before Officer Duplantier left the scene, he went back inside of the residence, where he observed the white T-shirt on a sofa in the back room, and seized it.
In State v. Watkins, 98-2578, p. 4 (La. App. 4 Cir. 12/16/98), 726 So.2d 994, 996, this court addressed the issue of exigent circumstances justifying an otherwise impermissible search, stating:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La. 1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
98-2578, at p. 4, 726 So.2d at 996, quoting State v. Page, 95-2401, p. 10 (La.App. 4th Cir.8/21/96), 680 So.2d 700, 709, writ denied, 96-2352 (La.2/21/97), 688 So.2d 522.
As both the knife and T-shirt were easily observed by Officer Duplantier inside of the residence, they were in "plain view." The requisites for the plain view exception were set forth by this court in State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, as follows:
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, (1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found inadvertently in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently." State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1126 and 629 So.2d 1140. See also State v. Harris, 97-1620 (La. App. 4 Cir. 8/27/97), 700 So.2d 222.
97-2774, at pp. 9-10, 731 So.2d at 327.
In the instant case, Officer Duplantier was justified in standing on the porch of the residence where, based on information received from defendant's brother, defendant was located, along with another individual. The brother had previously informed Officer Duplantier that he had seen defendant standing over a female wielding a knife and demanding that she "give it up." Therefore, at the time he and Det. Balancier went to the *1201 residence, Officer Duplantier already had probable cause to believe defendant had committed a crime. Officer Duplantier shined his flashlight into the interior of the dark front room, where he saw the knife on top of the television set. This action did not violate any rights of defendant. See State v. Thompson, 617 So.2d 956 (La. App. 4th Cir.1993), writ denied, 620 So.2d 849 (La.1993)(mere illumination of a vehicle's interior with a flashlight does not violate any rights of a defendant). Knowing that there was another individual inside of the residence, Officer Duplantier was justified in seizing the knife for no other reason than his and Det. Balancier's safety-to prevent the person known to be inside from possibly using it to harm the officers. Accordingly, the knife was lawfully seized pursuant to exigent circumstances, and the trial court properly denied defendant's motion to suppress the evidence as to the knife.
After taking defendant into custody and seizing the knife, Officer Duplantier was justified in entering the darkened residence to determine whether the other person could present a threat to himself or Det. Balancier, thus avoiding a possible violent confrontation that could cause injury to the officers. At that time, Officer Duplantier noticed what he characterized as "small fires" on a coffee table in the back room. After the unidentified white female left the scene, Officer Duplantier was justified by exigent circumstances-reasons of public safety-in reentering the residence to ensure that the fires were extinguished. While there, he noticed the T-shirt in plain view and lawfully seized it. Accordingly, the trial court properly denied defendant's motion to suppress the T-shirt.
Finally, as apparently no knife was recovered from defendant's person, and he was not wearing the shirt allegedly worn during the robbery, the officers would, in all probability, have secured the residence and obtained a warrant to search for those items. As both the knife and the T-shirt would have been discovered pursuant to such a search with a warrant, both items were admissible under the "inevitable discovery doctrine," which holds that evidence found as a result of a violation of a defendant's constitutional rights is admissible if it can be shown by a preponderance of the evidence that the evidence ultimately or inevitably would have been lawfully discovered. See Nogess, 729 So.2d at 138; State v. Jones, 98-0963, p. 4 (La.App. 4 Cir. 6/24/98), 720 So.2d 1, 5. For this reason also, the trial court properly denied defendant's motion to suppress the evidence.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant claims the trial court erred in adjudicating him a third-felony habitual offender, because the State failed to prove that the cleansing period for one of his predicate convictions had not elapsed.
La. R.S. 15:529.1(C)[1] provides:
This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
The expiration of the previous sentence is determined by the date of the actual discharge from supervision by the *1202 Department of Corrections. State v. Lorio, 94-2591, p. 4 (La.App. 4 Cir. 9/28/95), 662 So.2d 128, 130. Generally, the State has the burden of proving that the ten-year cleansing period of La. R.S. 15:529.1 has not expired. State v. Langlois, 96-0084, p. 14 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, 548, writ granted, remanded, on other grounds, 97-1491 (La.11/14/97), 703 So.2d 1281. In the instant case, however, defendant failed to object contemporaneously to the lack of a discharge date for either of the two predicate felonies. In State v. Jones, 94-0071, p. 5 (La.App. 4 Cir. 3/29/95), 653 So.2d 746, 748 this court held that the failure to object contemporaneously to the lack of a discharge date precluded review of that claim on appeal. However, in Lorio, supra, the defendant also failed to specifically object to the State's failure to show that the then five-year cleansing period had elapsed, but did object to "the certified copies of the prior charges used as the predicate" in the habitual offender proceeding. 94-2591, at p. 3, 662 So.2d at 130. This court found that the general objection was sufficient to preserve the issue for review.
While defendant in the instant case did not specifically object to the lack of a discharge date, defense counsel noted that defendant no longer wished to proceed in his opposition to the habitual offender bill but that he did want to "maintain his right to object to" the habitual offender proceedings. A handwritten letter by defendant was filed into the record, and reflects that he did not want to delay his appeal by opposing the habitual offender bill, but he nevertheless desired to maintain his right to object. Under these circumstances, we find that defendant preserved his right to raise the cleansing period issue.
Defendant's argument is limited to one prior conviction. Defendant pleaded guilty on May 6, 1986, to purse snatching and received a four-year sentence in the custody of the Department of Corrections, with credit for time served from March 29, 1986. Where less than ten years have elapsed between convictions, it is not necessary for the State to prove discharge dates. See State v. Tucker, 95-0030, p. 11 (La.App. 4 Cir. 9/18/96), 682 So.2d 261, 266. Defendant committed the instant offense on June 6, 1997, exactly eleven years and one month after the May 1986 conviction. On the face of the dates, therefore, the ten-year cleansing period had not elapsed from the time of the May 1986 conviction and the commission of the instant offense.
In State v. Falgout, 575 So.2d 456 (La. App. 4 Cir.1991), as in the instant case, the State failed to introduce evidence to establish the date the defendant had been released from State supervision after serving a sentence for a predicate felony. This court calculated the earliest possible release date for the defendant-taking into consideration that he would not have been eligible for good time, and would have had to serve at least one-third of his sentence before being eligible for parole-and concluded that the cleansing period had not elapsed at the time of the commission of the offense for which the defendant received the enhanced sentence pursuant to La. R.S. 15:529.1. In Lorio, supra, this court cited Falgout with approval, where the State failed to present evidence of an actual discharge date. However, the court ultimately vacated the habitual offender sentence because the State had calculated the discharge date based on the full sentence and the date of the defendant's conviction, without taking into account possible early discharge for good time or for other reasons.
In the instant case, pursuant to La. R.S. 15:571.3(B) and 15:571.4(B), as in effect in 1986, and assuming defendant's May 1986 conviction was his first felony conviction, he could have been eligible for "good time" reduction of his sentence at the rate of fifteen days per month for time actually served. Pursuant to La. R.S. 15:574.4, as in effect in 1986, defendant would have been eligible for parole after serving one third of his sentence. However, *1203 a parole date does not equate with a discharge date, as a parolee remains under the supervision of the Department of Corrections; a parolee's discharge date is the date he is actually discharged from such supervision. See Lorio, supra.
Assuming that defendant received all the good time credit he would have been eligible for, he would not have been released from custody until he had served approximately two and one-half years of his four-year sentence. Even had defendant been paroled at some point, he would not have been released from parole supervision any sooner than that. Allowing defendant credit for time served between his March 29, 1986 arrest and May 6, 1986 conviction, he would have committed the instant offense less than ten years after the May 1986 conviction. Moreover, La. R.S. 15:529.1 provides that any period of servitude in a penal institution shall not be included in the computation of the cleansing period. Defendant was sentenced on April 19, 1993 to two years at hard labor, with credit for time served. Even assuming defendant served only one year of that sentence, or was under the supervision of the Department of Corrections for one year, that would essentially amount to another year added to the ten-year cleansing period.
While it is possible, though highly improbable, that defendant received a pardon or commutation of either his 1986 sentence or his 1993 sentence, the record reflects that "more probably than not" the cleansing period had not expired. This has been held sufficient to sustain a habitual offender adjudication. See State v. Turner, 365 So.2d 1352, 1355 (La.1978). Accordingly, there is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, defendant claims that his sentence is constitutionally excessive.
Defendant was sentenced to life imprisonment, without the benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1(A)(1)(b)(ii) provides:
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Defendant was convicted of armed robbery, a crime of violence as defined by La. R.S. 14:2(13). Therefore, defendant received the mandatory life sentence as a third felony habitual offender under La. R.S. 15:529.1(A)(1)(b)(ii).
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906, at p. 11, 709 So.2d at 678.
*1204 In State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282, 1999 WL 250269, this court vacated the life sentence of a fourth felony habitual offender sentenced pursuant to La. R.S. 15:529.1(A)(1)(c)(ii)-essentially the same as the provision at issue in the instant case, except it applies to fourth felony offenses-after his conviction for distribution of one rock of crack cocaine. This court found that, on the facts pertaining to that defendant, it was "unable to conclude that this life sentence is not excessive under the constitutional standard." 97-1553, at p. 11, 723 So.2d at 1020.
The defendant in Burns was observed by police selling one rock of crack cocaine to a third person. When arrested, the defendant was in possession of two more rocks and fifty-seven dollars. Defendant testified at trial that he was addicted to cocaine. Noting that two of defendant's prior convictions were for possession of cocaine, this court concluded, "thus it is safe to assume he deals to support his habit," 97-1553, at p. 9, 723 So.2d at 1019. The defendant was twenty-five years old, and this court felt that the defendant was "young enough to be rehabilitated." This court noted that a sentence less than life would "afford him the opportunity to partake in self-improvement classes while incarcerated and the possibility of a productive future." Id. The defendant's father testified at trial, stating that the defendant was well liked in the community and would go out of his way to help anyone. Though recognizing that the fact that none of the defendant's felonies were non-violent alone was insufficient to override the legislatively designated sentences of the Habitual Offender Law, this court cited Johnson, supra, for the proposition that this fact should not be discounted. This court also noted that there were no allegations that the defendant ever possessed a dangerous weapon. Finally, the court noted that the defendant had difficulties with memory regarding time and place, attributing the problems to a previous gunshot wound to the head. The court noted that this "surely must affect [the defendant's] ability to function in the same manner as someone who has not been shot in the head." 97-1553, at p. 10, 723 So.2d at 1020. The court also cited two economic impact considerations-that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposes an undue burden on taxpayers of the state who must feed, house, and clothe the defendant for life, and provide geriatric care in later years.
In State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, this court declined to extend Burns to a case where there was no evidence that the defendant was driven by his addiction to sell drugs to support his drug habit, and where the record was devoid of any testimony suggesting that the defendant might possess any redeeming virtues. This court stated:
Where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
97-2060, at p. 13, 730 So.2d at 1027.
In sentencing defendant in the instant case, the trial court stated:
The Court finds that there is no basis in fact or in law for allowing any sentence to fall below that minimum sentence that is required, the mandatory sentence, the absolute sentence. The Court is aware of its obligation under Dorthey, D-O-R-T-H-E-Y, of course, that if the Court finds that there is some compelling reason that truly, truly can justify deviation below this automatic sentence that that can be done. The court is aware of that obligation.
Based on the totality of this, including the fact that this Court previously has given this gentleman a chance, granting him a sentence that was in the minimal range in 1986 for another very serious *1205 crime against another lady, that of purse snatching, imposing a sentence of only four years out of a possible twenty, there being a subsequent conviction for the crime of theft, and the rap sheet that has been provided by the State to the Court is attached and made part of the record in this case.
Defendant was thirty-four years old at the time of sentencing. While the record reflects no prior drug arrests, the narrative of the police report does state that defendant's brother informed Officer Duplantier that defendant had a history of drug abuse. No one testified on defendant's behalf at sentencing as to any redeeming qualities possessed by him. As this court noted regarding the life sentence imposed on the defendant in Burns, taxpayers will foot the bill for this defendant's lifetime of incarceration. As there is no evidence that defendant was ever gainfully employed, it cannot be said that society will lose a tax paying citizen.
Considering the record, it cannot be said that defendant proved by clear and convincing evidence that the mandatory sentence imposed on him pursuant to the Habitual Offender Law is constitutionally excessive.
For the foregoing reasons, the conviction and sentence of defendant David Martello are hereby affirmed.
AFFIRMED.
NOTES
[1] Prior to 1994, the cleansing period of La. R.S. 15:529.1(C) was five years. The cleansing period was increased to seven years in 1994, and ten years in 1995. The cleansing period in effect at the time of the current offense applies, even where the period in effect at the time of the predicate conviction was shorter. State v. Brinson, 97-1471 (La. App. 4 Cir. 9/3/97), 699 So.2d 510, writ denied, 97-2452 (La.4/9/98), 717 So.2d 1137.