J^MOON LANDRIEU, Judge Pro Tempore.
This appeal concerns only a sentencing issue. Finding merit in the defendant’s position, we vacate the sentence and remand the case.
James J. Young, Jr., was charged with possession of cocaine in violation of La. R.S. 40:967(C), and after a jury trial, he was convicted of attempted possession. He was sentenced to thirty months at hard labor with a recommendation that he be placed in the About Face Program. His motion for an appeal was granted.
The State filed a multiple bill of information charging Mr. Young as a third offender based upon two 1989 convictions for possession of cocaine. On September 5, 2002, the court heard argument on whether the defendant could be adjudicated as a multiple offender because the ten-year expiration period from the prior convictions had passed. The court found the defendant to be a third offender after the defendant admitted to all other aspects of the multiple bill. The court vacated the original sentence and sentenced the defendant as a third offender to thirty months at hard labor under the provisions of La. R.S. 15:574.5, the About Face Program in Orleans Parish Prison. A motion to reconsider sentence was filed on behalf of the defendant, with the court specifically stating that, if the defendant | ?successfully completed the About Face program, the court would reduce his sentence from thirty months to twenty months.
Mr. Young appealed, and in an unpublished opinion, this court refused to consider his appeal because the trial court had not ruled on the motion to reconsider the *660 multiple offender sentence. State v. Young, 2002-1846 (La.App. 4 Cir. 3/12/03), 841 So.2d 106. The ease was remanded and on March 26, 2003, the trial court denied the motion for reconsideration of sentence.
The facts of the case are not at issue here.
In his sole assignment of error, the appellant argues that the State failed to prove that less than ten years had elapsed since the expiration of the maximum sentences of the prior convictions. The defendant testified at the hearing that on September 28, 1991, he was told he was being discharged from the Washington Correctional Institute; he was given a bus ticket and twenty dollars but was never told to report to a parole officer or given any documents to sign. The defendant further informed the court that at the time of this discharge he had “done 28 months flat” because of a probation revocation from his first conviction.
According to the multiple bill filed by the State, the defendant pled guilty to possession of cocaine in case number 333-017 “G” on April 13, 1989, and in case number 335-037 “E” on August 31, 1989. The defendant’s instant offense occurred on February 26, 2002, twelve and one-half years later. The multiple bill of information did not provide any allegations regarding the length of the defendant’s prior sentences, and the State did not introduce any evidence or make any argument at the hearing.[1] Aside from the defendant’s own statements to the | ¡¡court that he had been discharged without any supervision in September 1991, the only reference to the date the defendant’s sentences may have been completed was his counsel’s statement that “the DOC’s records indicate that he was not released from their — from a full-time parole date until after the cleansing period would have begun.” Counsel further explained that the reason she was referring to a parole date at all was “because the documents from DOC from the computer indicate a ‘GTP,’ which [she was] calling a good time parole, and if it were not for that non-supervised release, the cleansing period would not be in effect because he would have been eight months short of — or eight months longer than the 10 year period.” The court explained to defense counsel that the ten years runs from “the completion of any jail sentence, probationary period, or good time release” to which counsel responded that, “if it is as it is indicated on their records, a good time parole, then he was not notified of that.” Appellate counsel now argues to this Court that, aside from the defendant’s statement that he was discharged from custody in September 1991, there was no evidence of his discharge.
In State v. Martello, 98-2066, pp. 15-17 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1202-03, this Court reviewed jurisprudence where the State failed to affirmatively prove a discharge date but relied upon courts making instead theoretical calculations:
In State v. Falgout, 575 So.2d 456 (La.App. 4 Cir.1991), as in the instant case, the State failed to introduce evidence to establish the date the defendant had been released from State supervision after serving a sentence for a predicate felony. This court calculated the earliest possible release date for the defendant-taking into consideration that he would not have been eligible for good time, and would have had to serve at *661 least one-third of his sentence before being eligible for parole — and concluded that the cleansing period had not elapsed at the time of the commission of the offense for which the defendant received the enhanced sentence pursuant to La. R.S. |415:529.1. In Lorio, supra, [94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128] this court cited Falgout with approval, where the State failed to present evidence of an actual discharge date. However, the court ultimately vacated the habitual offender sentence because the State had calculated the discharge date based on the full sentence and the date of the defendant’s conviction, without taking into account possible early discharge for good time or for other reasons. [Emphasis added.]
- In the instant case, pursuant to La. R.S. 15:571.3(B) and 15:571.4(B), as in effect in 1986, and assuming defendant’s May 1986 conviction was his first felony conviction, he could have been eligible for “good time” reduction of his sentence at the rate of fifteen days per month for time actually served. Pursuant to La. R.S. 15:574.4, as in effect in 1986, defendant would have been eligible for parole after serving one third of his sentence. However, a parole date does not equate with a discharge date, as a parolee remains under the supervision of the Department of Corrections; a parolee’s discharge date is the date he is actually discharged from such supervision. See Lorio, supra.
Assuming that defendant received all the good time credit he would have been eligible for, he would not have been released from custody until he had served approximately two and one-half years of his four-year sentence. Even had defendant been paroled at some point, he would not have been released from parole supervision any sooner than that. Allowing defendant credit for time served between his March 29, 1986 arrest and May 6, 1986 conviction, he would have committed the instant offense less than ten years after the May 1986 conviction. Moreover, La. R.S. 15:529.1 provides that any period of servitude in a penal institution shall not be included in the computation of the cleansing period. Defendant was sentenced on April 19, 1993 to two years at hard labor, with credit for time served. Even assuming defendant served only one year of that sentence, or was under the supervision of the Department of Corrections for one year, that would essentially amount to another year added to the ten-year cleansing period. While it is possible, though highly improbable, that defendant received a pardon or commutation of either his 1986 sentence or his 1993 sentence, the record reflects that “more probably than not” the cleansing period had not expired. This has been held sufficient to sustain a habitual offender adjudication. See State v. Turner, 365 So.2d 1352, 1355 (La.1978). Accordingly, there is no merit to this assignment of error.
In State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272, the Supreme Court discussed La. R.S. 15:529.1 and the inapplicability of enhanced sentencing if Linore than ten years have elapsed from the sentence for the prior conviction or convictions:
The purpose of the Habitual Offender Law is to deter and punish recidivism. State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677. To this end, subsection (A) of the statute sets out enhanced penalties to be imposed on persons who have been convicted of a felony and thereafter commit subsequent felonies. The statute provides the penalties after identifying the number of felonies committed by stating, for exam- *662 pie, “If the second felony is such that ...and “If the third felony is such that....”
Subsection (C), however, provides that “[t]his Section,” i.e., the Habitual Offender Law, “shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions ... and the time of the commission of the last felony for which he has been convicted.” We interpret this subsection to mean that in order to determine whether the Habitual Offender Law applies at all to enhance a defendant’s sentence after conviction of a subsequent felony, we must look to that time period between defendant’s discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony. If that time period encompasses more than ten years, then the Habitual Offender Law is inapplicable to defendant’s case and he cannot be sentenced as anything other than a first offender. If, on the other hand, ten years or less have elapsed between the defendant’s discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony, then the Habitual Offender Law is applicable and subsection (A) is employed to determine the appropriate sentence.
Everett, pp. 7-8, 816 So.2d at 1276-77. In a footnote, the court, citing State v. Anderson, 349 So.2d 311, 314 (La.1977), explained that the phrase “expiration of the maximum sentence ... of the previous conviction,” means “the date of the individual’s actual ‘discharge’ from being subject to penitentiary confinement under the earlier conviction relied upon.”
The language employed by this Court in Lorio, Falgout, and Martello indicates that an early release because of good time credit equates to the expiration of the maximum sentence, while the language of Everett implies that, if the | fidefendant’s status upon release is such that he can be returned to prison to serve out the remainder of his sentence, then the maximum sentence has not expired. In this case, the State introduced no evidence to indicate when the defendant was released from custody, whether his alleged release in September 1991 was a full and complete discharge without further possible incarceration, which is what the defendant contended occurred, or whether he was released on a supervised parole basis which placed him at risk of reincarceration. The trial court concluded that the defendant’s release in September 1991 was not a final discharge without having been provided with any evidence by the State, even over the defendant’s persistent argument that he was not on any type of parole when he was released. Without documentation regarding the defendant’s sentences and release date, this Court cannot undertake the type of calculations which might be permitted under Falgout and Lorio.
Under La. R.S. 15:529.1(D)(l)(b) the State bore the burden of proof at the multiple bill hearing. The defendant strenuously argued that he was given a full discharge in September 1991, more than ten years before he committed the instant offense. The State introduced no evidence, instead allowing the trial court to speculate on why or whether the defendant was still under the parole supervision of the Department of Corrections in February 1992. The appellant’s argument that the State did not meet its burden of proof has merit.
Accordingly, the defendant’s multiple offender adjudication and sentence are vacated and the matter remanded for further proceedings.
*663 SENTENCE VACATED AND REMANDED.

. According to the transcript, two assistant district attorneys were present, but neither spoke a single word at the hearing.